## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

ZACHERY OTIS MATTHEWS,

        Petitioner,

v.

STATE OF MINNESOTA,

        Respondent.

File No. 11-cv-651 (PAM/TNL)

**REPORT & RECOMMENDATION**

---

Zachery Otis Matthews, OID# 209462, 5329 Osgood Ave, Stillwater, MN 55082 (pro se Petitioner); and

Thomas A. Weist, Hennepin County Attorney's Office, 300 6th Street South,  Suite C-2000, Minneapolis, MN 55487 (for Respondent).

---

## I.     INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Petitioner Zachery Otis Matthews's Petition under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody (Docket No. 1).  This action has been referred to the undersigned magistrate judge for report and recommendation to the district court under 28 U.S.C. § 636 and D. Minn. LR 72.2(b).

For the reasons stated below, **IT IS HEREBY RECOMMENDED** as follows: the Petition under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody (Pet., Docket No. 1) be **DENIED**; this action be **DISMISSED WITH PREJUDICE**; and the certificate of appealability be **DENIED**.

## II.    BACKGROUND

Petitioner was convicted of first-degree murder and sentenced to life in prison. *State v. Matthews*, 779 N.W.2d 543, 548 (2010). The following facts are set forth in the opinion of the Minnesota Supreme Court:

> [Petitioner] and [Kristine] Larson began dating in 2004 and together had a son, D.L., in 2006. Larson ended her relationship with [Petitioner] in May 2007. At the time of the murder, Larson and D.L. lived in St. Paul Park with Larson's mother, D.T., and [Petitioner] lived in an apartment in St. Paul.

> On the night of December 19, 2007, witnesses saw smoke coming from a car parked in a garage area in Minneapolis. After the fire was extinguished, a woman's body was discovered upside down in the back seat of the car. Police identified the victim as Kristine Larson. Larson's autopsy revealed ligature marks around her neck, blood around her nose, a cut on her forehead, and burn injuries on her face, back, and feet. The cause of death was ligature strangulation with a shoelace that had "a small loop on one end of the lace that was tied in a ring, and secured with a knot." The death was ruled a homicide. An arson investigator confirmed that the fire was intentionally started using yellow pages from a phone directory and concluded that the fire was an effort to cover up Larson's homicide.

> Minneapolis police detectives interviewed several witnesses, and the investigation quickly turned to [Petitioner]. During [Petitioner's] first interview with police, he stated that Larson planned to arrive at his apartment around 2:00 p.m. to pick up D.L. and then go to Toys for Tots. According to [Petitioner], Larson did not show up, but he and D.L. took the bus to Toys for Tots, and returned home at about 6:00 p.m. [Petitioner] stated that he had broken up with Larson a month earlier, but he admitted he was not happy that Larson was dating another man. He told police that he used his cell phone to call D.T. that afternoon to locate Larson.

Police reviewed bus video recordings and determined that [Petitioner] and D.L. were not on the bus that afternoon. Further, a man matching [Petitioner's] description was seen at about 7:30 that evening walking eastbound on the shoulder portion of Highway 94 crossing over the Mississippi Bridge toward St. Paul. Also, [Petitioner's] cell-phone records revealed that his cell phone accessed a tower near his apartment in St. Paul in the late afternoon and then the cell phone accessed a Minneapolis tower between about 8:00 p.m. and 9:30 p.m.

At a second interview, [Petitioner] was given a *Miranda* warning and confronted with the discrepancies between his story and the police investigation. Eventually, [Petitioner] admitted that when he arrived at his apartment that evening he found Larson dead in his kitchen closet and he panicked. He stated that he carried Larson's body to her car, drove the car to Minneapolis, abandoned the car, and then walked alongside Highway 94 across the Mississippi bridge to his apartment in St. Paul. He denied killing Larson or starting the car on fire.

Police obtained a search warrant for [Petitioner's] apartment. New yellow pages phone directories were in a package in the lobby of [Petitioner's] apartment building; some of the directories were missing from the package. Blood found on a pillar near the kitchen and on the kitchen floor of [Petitioner's] apartment was tested for DNA, and [Petitioner] and Larson could not be excluded as contributors. A mixture of DNA was also found on the shoelace ligature. The predominant DNA was Larson's, but [Petitioner] could not be excluded as a contributor.

*Id.* at 546-47.

Petitioner was indicted by a grand jury for first-degree premeditated murder in violation of Minn. Stat. § 609.185(a)(1) and first-degree domestic-abuse murder in violation of Minn. Stat. § 609.185(a)(6). *Id.* at 547. He was also charged with second-

degree intentional murder in violation of Minn. Stat. § 609.19, subd. 1(1), and interference with a dead body in violation of Minn. Stat. § 609.502, subd. 1. *Id.*

Prior to trial, the State moved to admit eighteen "incidents of alleged domestic abuse to establish relationship evidence under Minn. Stat. § 634.20 . . . and a past pattern of domestic abuse." *Id*. at 547. Following a hearing on Petitioner's counter-motion to suppress, the trial court admitted twelve incidents, placing limitations and conditions on some of the incidents. *Id.* at 548.

Petitioner was found guilty on all counts; judgment of conviction was entered on the offense of first-degree premeditated murder and Petitioner was sentenced to life imprisonment. *Id*. Petitioner appealed to the Minnesota Supreme Court, raising six claims of error: (1) the trial court failed to distinguish between evidence of a past pattern of domestic abuse and evidence of a past relationship when instructing the jury regarding the elements of domestic-abuse murder, *id*.; (2) the trial court confused the jury by failing to fully employ a model jury instruction regarding domestic-abuse murder, *id*. at 550; (3) prosecutorial misconduct resulted in deprivation of a fair trial, *id*. at 551; (4) the trial court improperly applied a Minnesota statute regarding the admission of evidence, *id*. at 553; (5) the indictment was insufficient because it did not fully notify Petitioner of the crimes against which he had to defend, *id*.; and (6) Petitioner's *Batson* challenge to the dismissal of a potential juror was improperly denied. *Id*. at 554.

The Minnesota Supreme Court affirmed Petitioner's conviction, concluding: (1) the trial court did not err when instructing the jury regarding domestic-abuse murder, *id*. at 550; (2) the prosecutor's conduct did not infringe Petitioner's substantial rights, *id*. at

553; (3) the trial court did not abuse its discretion in admitting evidence under Minn. Stat. § 634.20, *id*.; (4) Petitioner waived any objection to his indictment, *id*. at 554; and (5) the trial court's conclusion regarding Petitioner's *Batson* challenge was not clearly erroneous, *id*. at 555.

Petitioner's filed the instant petition on March 15, 2011.

## III.  PETITION FOR WRIT OF HABEAS CORPUS

### 1.  Standard of Review

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Habeas relief is available to a state prisoner if "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  The Anti-Terrorism and Effective Death Penalty Act (AEDPA) limits habeas review to state adjudications that:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

A state court decision is considered "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law" or "decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A

state court decision is an "unreasonable application" if it "identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "A federal court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005) (internal quotes and citations omitted).

"[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A federal claim is fairly presented in the state appellate process if the petitioner refers "to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (internal quotes and citations omitted). A claim is said to be "unexhausted" if it has not been fairly presented in one complete round of the state's established appellate review process. *O'Sullivan*, 526 U.S. at 845.

When a petitioner has failed to fairly present federal constitutional claims in state court, the federal court must determine whether the state procedural rules would allow a hearing on the unexhausted claim in a state court proceeding. *McCall*, 114 F.3d at 757. If the state's procedural rules would preclude a hearing on the merits, the petitioner has procedurally defaulted and is likewise procedurally barred from obtaining federal habeas relief, unless cause and prejudice, or fundamental miscarriage of justice, can be

demonstrated. *Id.* at 758. A claim that is procedurally defaulted under state law is barred from federal habeas review only if the state procedural rule is "firmly established" and "regularly followed." *Oxford v. Delo*, 59 F.3d 741, 744 (8th Cir. 1995).

Under Minnesota law, "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). Two exceptions to the *Knaffla* rule exist: (1) where a claim is so novel that its legal basis was not reasonably available at the time of direct appeal, or (2) if the defendant did not deliberately or inexcusably fail to raise the issue in the first appeal and fairness requires review. *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006).

### 2. Issues before the Court

Petitioner raises six arguments in his petition: (1) the indictment failed to "charge an essential element of the offense"; (2) the trial court erred in denying Petitioner's *Batson* challenge; (3) evidence admitted pursuant to Minn. Stat. § 634.20 was inadmissible as a matter of law; (4) the prosecutor engaged in prejudicial error during closing arguments; (5) the trial court erred when it failed to instruct the jury on which prior incidents could be used to determine the existence of a "past pattern of domestic abuse"; and (6) the trial court failed to properly instruct the jury on every element of domestic-abuse murder. *See generally* Pet. The State opposes the petition. *See generally* Mem. in Resp. to Pet., Docket No. 9.

Petitioner's claims can be separated into two groups. Two of the claims (Claims 2 and 4) are applicable to Petitioner's conviction for first-degree premeditated murder—the

crime for which he was sentenced and is currently in custody—and the trial process overall. The remaining four claims (Claims, 1, 3, 5, and 6) relate only to the offense of domestic-abuse murder. "It is axiomatic that federal habeas corpus relief is available to one only if 'he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Romano v. Wyrick*, 681 F.2d 555, 556 (8th Cir. 1982) (quoting 28 U.S.C. § 2254(a)); *see also Wainwright v. Goode*, 464 U.S. 78, 83 (1983) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). Because judgment of conviction was entered only for the offense of first-degree premeditated murder and not the unadjudicated guilty finding on domestic-abuse murder, this Court lacks jurisdiction over the four claims relating to domestic-abuse murder. *See Romano*, 681 F.2d at 556 (court lacked jurisdiction over claims regarding reckless-driving conviction because Petitioner's incarceration was due to revocation of probation associated with prior conviction, not the reckless-driving conviction). In the interests of completeness, however, this Court will fully address all submitted claims in its report and recommendation to the district court.

For the reasons set forth herein, this Court recommends that the petition be denied and this matter be dismissed with prejudice.

### 3. Insufficiency of the Indictment

Petitioner contends that the grand jury indictment was insufficient because the indictment failed to separately list the elements required to prove domestic abuse—a predicate element of the charge of domestic-abuse murder—and therefore the indictment

failed to provide adequate notice of the need to defend against the crime of domestic abuse at trial.  Pet. at 7-8.

Although Petitioner raised this argument on his direct appeal, the Minnesota Supreme Court did not consider Petitioner's claim on the merits because Petitioner failed to object to the indictment until after his trial.  *See Matthews*, 779 N.W.2d at 553-54.  The Minnesota Supreme Court held that, under Minnesota law, "[o]bjections to an indictment must be made by motion no later than three days before the omnibus hearing.  Failure to include all defenses, objections, issues, and requests in a motion constitutes a waiver." *Id.* at 553 (internal quotes and citations omitted).

Petitioner's arguments concerning the indictment are procedurally defaulted because they were not fairly presented to the Minnesota Supreme Court.  *McCall*, 114 F.3d at 756-57 ("[A] federal court may usually only consider those claims which the petitioner has presented to the state court in accordance with state procedural rules.") (internal quotes and citations omitted).  No exceptions to Minnesota's *Knaffla* rule apply. Petitioner has not shown cause or prejudice for his default or that a fundamental miscarriage of justice would occur absent this Court's consideration of Petitioner's claim. Therefore, habeas relief is not available.

Petitioner's claim also fails on the merits.  "Federal-court review of the sufficiency of an information [or indictment] is limited to whether it was constitutionally deficient; whether it comported with requirements of state law is a question for state courts." *Kilgore v. Bowersox*, 124 F.3d 985, 993 (8th Cir. 1997).  The issue is whether the indictment "gave [the defendant] adequate notice of the potential charges against him so

that he could prepare to contest those charges." *Id*.; *see also Hulstine v. Morris*, 819 F.2d 861, 864 (8th Cir. 1987) ("Due Process requirements may be satisfied if a defendant receives *actual notice* of the charges against him, even if the indictment or information is deficient."), *cert. denied*, 484 U.S. 1068 (1988). An indictment may be constitutionally deficient if it fails to specify adequately a crime underlying those charged in the indictment. *Forgy v. Norris*, 64 F.3d 399, 403 (8th Cir. 1995) (an indictment charging the defendant with burglary based on intent to commit "a crime punishable by imprisonment" failed to provide adequate notice of the charges against which the defendant had to defend).

Petitioner's indictment laid out verbatim the language of Minn. Stat. § 609.185(a)(6), which provides:

> Whoever does any of the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life:
> . . .
> (6) causes the death of a human being while committing domestic abuse, when the perpetrator has engaged in a past pattern of domestic abuse upon the victim or upon another family or household member and the death occurs under circumstances manifesting an extreme indifference to human life.

The indictment then made specific reference to Paragraph (c) of section 609.185, which defines "domestic abuse" for purposes of domestic-abuse murder:

> For purposes of [domestic-abuse murder], "domestic abuse" means an act that:
> (1) constitutes a violation of section 609.221, 609.222, 609.223, 609.224, 609.2242, 609.342, 609.343, 609.344, 609.345, 609.713, or any similar laws of the Unites States or any other state; and

> (2) is committed against the victim who is a family or household member . . . .

Minn. Stat. § 609.185(c).

Petitioner was informed of the charge of domestic-abuse murder and the elements of that offense were laid out in the indictment. As for the underlying crime, specific reference was made to the section of the Minnesota criminal code which defines "domestic abuse" for purposes of domestic-abuse murder. Ten Minnesota statutes are identified therein, covering three classes of crimes: assault, criminal sexual conduct, and terroristic threats.[1]

This Court concludes that the indictment gave Petitioner adequate notice of the charge against him and is not rendered insufficient for failure to specifically set out the elements of the underlying offense of domestic abuse. *See United States v. Pool*, 929 F.2d 1476, 1479 (10th Cir. 1991) (rejecting appellant's argument that his indictment was insufficient because it failed to recite specific elements of a statute). The Court further concludes that, because the potential underlying offenses are restricted to three classes of crimes, the indictment is specific enough to remove the concerns highlighted in *Forgy supra*. Moreover, the fact that Petitioner moved to exclude the evidence used to establish a past pattern of domestic abuse prior to trial demonstrates that Petitioner had "adequate notice of the potential charges against him so that he could prepare to contest those charges." *Kilgore*, 124 F.3d at 993. For the foregoing reasons, this Court concludes that the indictment was not constitutionally deficient.

---

[1] The various numbers indicate different degrees of each crime. For example, section 609.221 defines first-degree assault, section 609.222 defines second-degree assault, etc.

### 4. Racial Discrimination During Jury Selection

Petitioner contends that the trial court erred during jury selection by permitting the State to use a preemptory challenge on Juror 31, a member of a racial minority, in violation of the Fourteenth Amendment's Equal Protection Clause. Pet. at 6-7. At trial, Petitioner objected when Juror 31 was struck and Petitioner subsequently asserted a Fourteenth Amendment violation on appeal to the Minnesota Supreme Court. *Matthews*, 779 N.W. 2d at 554-55. The Minnesota Supreme Court held that trial court's conclusion concerning a lack of purposeful discrimination was not clearly erroneous. *Id.* at 555. Petitioner has therefore exhausted his state court remedies with respect to this claim. *See McCall*, 114 F.3d at 756-57.

*Batson v. Kentucky*, 476 U.S. 79, 100 (1986), sets out a three-part test to determine if a potential juror was impermissibly dismissed in violation of Equal Protection under the Fourteenth Amendment. *Batson*, 476 U.S. at 96-98. First, the defendant must make out a prima facie case of racial discrimination. *Id.* at 96-97. Second, the State must demonstrate a race-neutral reason for the dismissal. *Id.* at 97-98. Third, the trial court must determine if the defendant has proven intentional race-based discrimination. *Id.* at 98.

"[E]ach of the three steps of the *Batson* inquiry involves a determination of fact." *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001). Federal courts "presume[] that [the state trial] court found the facts correctly, unless [the petitioner] rebuts that presumption with clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254 (e)(1)). Because "[t]he trial court has a pivotal role in evaluating *Batson* claims," its

determination "on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008).

At the first step, the trial court concluded that Petitioner established a prima facie case of racial discrimination. *Matthews*, 779 N.W.2d at 554. At the time Juror 31 was excused, nine jurors had been selected, but only one of those selected was a member of a racial minority. *Id.* "[O]ut of the five peremptory challenges the State had exercised at that point, four were against people of color." *Id.*

Proceeding to the second step, the trial court found that the State successfully articulated a race-neutral reason for the strike. *Id.* Juror 31 articulated past experience with domestic violence and made statements that could reasonably be construed as placing blame on the victim of domestic violence. *Id.*; *see also* Mem. in Resp. to Pet. at 27-28. For example, Juror 31 expressed that males and females "handle stress differently . . . men like [sic] always get mad, and they want to hit something." Mem. in Resp. to Pet. at 27. He then stated that the legal system was "hard on the male a little bit . . . when the female is the one pushing towards . . . that reaction [provoking a male to violence]." *Id.* Finally, regarding the incidents he personally witnessed, he stated that "my mom was sort of at fault." *Id.* at 28. The State indicated that it did not wish to seat a juror who might blame the victim of domestic abuse, given the charged crime of domestic-abuse murder. *See Matthews*, 779 N.W.2d at 554.

At the third step, the trial court ruled that Petitioner had not established purposeful discrimination. *Id.* at 554-55. In addition to the race-neutral rationale for excusing Juror 31, the trial court noted that the reasons for excusing the other potential jurors of racial

minorities were not motivated by race, thus dispelling the notion that a pattern of racial discrimination was present. *Id.* For example, Juror 6, a Somali woman, was dismissed because she displayed difficulty with English, particularly the legal concepts of reasonable doubt and burden of proof. *Id.* at 554. Juror 11, an African-American woman, was married to a man in prison for murder and also had a brother working in the public defender's office. *Id.*

It is true, as Petitioner asserts, that white jurors were seated who had past experience with domestic abuse. *Id.* at 554-55. "Juror 13's coworker was killed by her husband" and Juror 17 had family members who experienced abuse. *Id.* at 555 n.5. But neither juror actually witnessed domestic abuse first-hand, nor placed any blame on the victim. *See id.* at 555, 555 n.5.

Petitioner has not shown that the Minnesota Supreme Court's decision was contrary to or involved an unreasonable application of established federal law. Petitioner asserts that the race-neutral rationale offered by the State was "clearly a pretext," but Petitioner's only support for this argument consists of the same statistics regarding the State's exercised peremptory challenges that established a prima facie case at the first *Batson* step. Pet. at 7. Ample facts in the record, in particular Juror 31's statements expressing sympathy toward Petitioner, support the trial court's ruling. *See United States v. Davidson*, 449 F.3d 849, 852-83 (8th Cir. 2006) (crediting the government's race-neutral concern that an African-American venireperson might be unduly sympathetic to the defendant, despite the fact that similarly situated venirepersons were eventually

seated).  There is nothing unreasonable about the appellate court's evaluation of the facts or application of the law.

### 5.  Erroneous Admission of Evidence

Petitioner asserts that the trial court admitted evidence against him in violation of state law and due process of law.  Petitioner fairly presented this constitutional argument to the Minnesota Supreme Court, which concluded that the trial court did not abuse its discretion in admitting relationship evidence under Minn. Stat. § 634.20.  *See Matthews*, 779 N.W. at 553.[2]

Under Minnesota law, "[e]vidence of similar conduct by the accused against the victim of domestic abuse . . . is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Minn. Stat. § 634.20.  Petitioner argues that certain incidents of past conduct were erroneously admitted under this statute.  Pet. at 6.

"In the habeas context, '[r]ules of evidence . . . are usually matters of state law.  A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process.'"  *Bucklew v.*

---

[2] Petitioner's pro supplemental brief to the Minnesota Supreme Court makes reference to "U.S. Const. Amend. XIV (Equal Protection); U.S. Cont. Amend. V ( . . . nor be deprived of . . . liberty, or property without due process of law)."  Pet'r's Pro Se Appellate Br. At 2, Docket No. 10-1.  These references to the U.S. Constitution are inaccurate in the context of his challenges for two reasons.  First, a claim of erroneous admission of evidence does not implicate the Equal Protection Clause unless the defendant's membership in a protected class played a part in the trial court's decision.  Petitioner made no such assertion.  Second, it is the Due Process Clause of the Fourteenth Amendment that is applicable to the States, not the Due Process Clause of the Fifth Amendment.  It is sufficiently clear, however, that Petitioner alleges a violation of the Due Process Clause of the Fourteenth Amendment, which is enough to trigger habeas review.  *See Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so . . . .").

*Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006) (quoting *Adail v. Wyrick*, 711 F.2d 99, 102 (8th Cir. 1983)). "To establish a denial of due process[,] a petitioner must prove that the error asserted was of such magnitude that it failed to afford him the fundamental fairness which is the essence of due process." *Harris v. Wyrick*, 634 F.2d 1152, 1152 (8th Cir. 1980). Under the Due Process Clause, "the only federal right at issue is procedural," and "the relevant inquiry is what process [the defendant] received, not whether the state court decided the case correctly." *Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011). It has been "long recognized that 'a mere error of state law' is not a denial of due process." *Id.* (quoting *Engle v. Issac*, 456 U.S. 107, 121 (1982)).

The process afforded to Petitioner was substantial. A pretrial omnibus hearing was held concerning the incidents that the State sought to introduce. *See* Trial Ct. Order at 62, 83, Docket No. 10-2. Petitioner countered with a motion to exclude this evidence. *Id.* at 83. Petitioner was represented by counsel at the hearing. *Id.* at 62. Of the eighteen incidents that the State sought to introduce, one was withdrawn and five were excluded by the trial court, reducing the number of potentially admissible incidents to twelve. *Id.* at 88-102; *see also Matthews*, 779 N.W.2d at 547-48. Incidents were excluded on grounds of unreliability, hearsay, lack of corroboration, unfair prejudice, and failure to qualify as an incident of domestic abuse. *See, e.g.*, Trial Ct. Order at 92-93, 96, 98-99. The trial court placed further conditions and limitations on some of the admissible incidents. *Id.* at 90, 93, 95-96, 97, 99-101. The trial court's order from the omnibus hearing spans 51 pages, approximately 30 of which are devoted to the contested relationship evidence. *See id.* at 83-111. The order is detailed, explaining the trial

court's disposition of each alleged incident. Petitioner has not asserted bias on the part of the trial court, and there is no reason to conclude that he was not an impartial arbiter.

Furthermore, even if an error in the application of state law occurred, the foregoing demonstrates that Petitioner was afforded due process under the Fourteenth Amendment. *See, e.g.*, *Jackson v. Norris*, 651 F.3d 923, 926 (8th Cir. 2011) (holding that while a state court evidentiary ruling "may be questioned," the defendant's constitutional rights were not impaired because he was allowed to present a full defense). Petitioner has not shown that the Minnesota Supreme Court's decision was contrary to or unreasonably applied clearly established federal law or that the appellate court's decision resulted from an unreasonable determination of the facts.

### 6. Prosecutorial Misconduct

Petitioner contends that he was denied a fair trial as the result of three instances of prosecutorial misconduct during the prosecutor's closing argument. Pet. at 5-6. First, the prosecutor stated that Petitioner was in a "fit of insatiable rage," Petitioner "hatched a plan" to "ambush" Larson, Petitioner landed a "powerful blow" to Larson's face, and Petitioner's son witnessed the murder. *Matthews*, 779 N.W.2d at 551-52; Pet. at 6. Second, the prosecutor belittled and degraded Petitioner's defense by characterizing Petitioner's description of events as "concocted," "ridiculous," and "unbelievable." *Matthews*, 779 N.W.2d at 552. Third, the prosecutor misstated the law by arguing that an incident admitted as relationship evidence constituted evidence of a past pattern of

domestic abuse.[3]  *Id.* at 553.  Petitioner contends that these statements constitute a denial of due process.  *See* Pet. at 5-6.

Petitioner did not object to the prosecutor's closing argument at trial, *Matthews*, 776 N.W.2d at 551.  On appeal, Petitioner asserted that the prosecutor's arguments violated his right to due process under the Fifth and Fourteenth Amendments and state constitutional law.  Pet'r's Appellate Br. at 61, Docket No. 10-1.  Reviewing for plain error, the Minnesota Supreme Court concluded that evidence in the record supported the inferences made by the prosecutor regarding Petitioner's state of mind and possible actions.  *Matthews*, 779 N.W.2d at 551-52.

There is a split in the Eighth Circuit concerning the treatment of claims reviewed under the plain-error standard in the state appellate process.  *See, e.g.*, *Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009) (noting "an oft-noted, yet surprisingly persistent, split of authority in [the] circuit"); *Toua Hong Chang v. Minn.*, 521 F.3d 828, 832 n.3 (8th Cir. 2008) ("There appears to be a decisional split within our Circuit regarding the appropriateness of plain-error review in the habeas context.").  On the one hand, the Eighth Circuit has stated that "state court review of a claim for plain error does not preclude later consideration of the same argument in a collateral proceeding in federal court."  *Thomas v. Bowersox*, 208 F.3d 699, 701 (8th Cir. 2000); *see also, e.g.*, *Burns v. Gammon*, 173 F.3d 1089, 1095 (8th Cir. 1999) (applying plain error).  On the other hand, the Eighth Circuit has also stated that, when a petitioner does not raise an assignment of error to the trial court and a subsequent state appellate court applies only plain-error

---

[3] *See also* Section 7(a) *infra.*

review, "a properly limited plain error review by a state court does not cure procedural default." *Toney v. Gammon*, 79 F.3d 693, 699 (8th Cir. 1996).

"When a state court reviews a petitioner's claim under a plain-error standard, in federal habeas proceedings [the district court can] either review the claim for plain error or view the claim as procedurally barred and decline to consider it at all absent a showing of cause and prejudice." *Roll v. Bowersox*, 177 F.3d 697, 700 (8th Cir. 1999). Because Petitioner raised this claim on direct appeal to the Minnesota Supreme Court, Petitioner has exhausted his state court remedies. *See James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999) (stating an "issue is not procedurally barred because it was raised on direct appeal"). Therefore, this Court considers the merits of Petitioner's due process argument under the plain-error standard "to determine whether any manifest injustice resulted" from the prosecutor's comments. *Thomas*, 208 F.3d at 701 (quotation omitted); *see also Starks v. Bowersox*, No. 4:09-CV-499 (HEA), 2012 WL 685303, at *4 (E.D. Mo. Jan. 27, 2012) (reviewing unobjected-to closing argument for plain error following state court's plain-error review), *report and recommendation adopted*, 2012 WL 685303 (E.D. Mo. Mar. 2, 2012).

Under federal law, the question is "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. Relief is available only if the prosecutor's closing argument was so inflammatory and so outrageous that any reasonable trial judge would have *sua sponte* declared a mistrial." *Clemmons v. Luebbers*, 381 F.3d 744, 757 (8th Cir. 2004) (quotations and citations omitted); *see also Mack v. Caspari*, 92 F.3d 637, 643 (8th Cir. 1996). Here, Petitioner

simply repeats the argument he made to the Minnesota Supreme Court. Petitioner has not shown that the prosecutor's statements manipulated or misstated the evidence. *See Mack*, 92 F.3d at 643. He has not shown that the jury's verdict probably would have been different absent the prosecutor's comments. *See id.* He has not shown that the Minnesota Supreme Court's ruling is based on an unreasonable determination of the facts or contrary to clearly established federal law. On this record, the Court is unable to conclude that the prosecutor's closing arguments were so inflammatory or outrageous as to deny Petitioner due process and therefore no manifest injustice occurred.

### 7. Erroneous Jury Instructions Related to Domestic-Abuse Murder

Finally, Petitioner asserts that the trial court erred when instructing the jury on the charge of domestic-abuse murder and the element of a past pattern of domestic abuse, which the jury was required to find beyond a reasonable doubt in order to find Petitioner guilty under Minn. Stat. § 609.185(a)(6).

### a. Distinction Between Evidence of Domestic Abuse and Evidence of a Relationship

At trial, the State was permitted to introduce twelve incidents relating to Larson and Petitioner's volatile history. *Matthews*, 779 N.W.2d at 547-48. This evidence consisted of two types: relationship evidence and past-pattern-of-domestic-abuse evidence. *Id.* The trial court concluded that all twelve incidents qualified as relationship evidence under Minn. Stat. § 634.20, serving to illuminate the relationship between Larson and Petitioner. *Id.*; *State v. Barnslater*, 786 N.W.2d 646, 650 (Minn. App. 2010) ("Evidence presented under section 634.20 is offered to demonstrate the history of the

relationship between the accused and the victim of domestic abuse."). Six of those twelve incidents were also admitted as evidence of a past pattern of domestic abuse upon Larson by Petitioner in order to satisfy the substantive elements of domestic-abuse murder under Minn. Stat. § 609.185(a)(6). *Matthews*, 779 N.W.2d at 548; *State v. Goelz*, 743 N.W.2d 249, 255 (Minn. 2007) ("Domestic abuse murder requires the State to prove that the defendant 'engaged in a past pattern of domestic abuse upon the victim' . . . ." (quoting Minn. Stat. § 609.185(a)(6))). Petitioner argues that the trial court failed to make a critical distinction between evidence of *the relationship* between Larson and Petitioner and evidence of a *past pattern of domestic abuse*. Pet. at 5.

Under Minn. Stat. § 634.20, relationship evidence may include prior incidents of domestic abuse, but also includes other incidents such as violations of an order for protection or a harassment restraining order. *Compare* Minn. Stat. § 609.185(c)(1) (including within the definition of "domestic abuse" crimes of assault, criminal sexual conduct, or terroristic threats) *with* Minn. Stat. § 634.20 (permitting evidence of "similar conduct," including domestic abuse, violations of an order for protection, violations of a harassment restraining order, and stalking). Petitioner asserts that the jury instructions did not sufficiently distinguish evidence of a past pattern of domestic abuse from the relationship evidence, thereby permitting the jury to use the less severe relationship evidence to find a past pattern of domestic abuse. Pet. at 4-5.

At the close of trial, the jury was instructed that

> Minnesota statutes *define domestic abuse to include assault*, which consists of either (1) committing an act with intent to cause fear in another of immediate bodily harm, or death, or

> (2) intentionally inflicting, or attempting to inflict bodily
> harm upon another. . . . Third . . . the defendant engaged in a
> past pattern of domestic abuse against [] Larson. A past
> pattern consists of prior acts of domestic abuse, which form a
> reliable sample of observable traits or acts, which characterize
> that individual's behavior.

*Matthews*, 779 N.W.2d at 550 (emphasis added). Petitioner did not object to the jury instructions at trial. *Id.* at 548. On appeal to the Minnesota Supreme Court, Petitioner challenged the instructions on grounds of state law as well as federal law. *See* Pet'r's Appellate Br. at 43-56; Pet'r's Pro Se Appellate Br. at 2-6.[4] The Minnesota Supreme Court concluded that the instructions correctly stated Minnesota law and were not ambiguous. *Matthews*, 779 N.W.2d at 550-51.

"[H]abeas precedent places an 'especially heavy' burden on a defendant who . . . seeks to show constitutional error from a jury instruction that quotes a state statute." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)). "[T]he pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 191 (internal quotes and citations omitted). A slight possibility that the jury misapplied the instruction is not a denial of due process. *Id.* In addition, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (quotation omitted).

---

[4] *See supra* n.2.

While the instruction does not specifically exclude consideration of less severe relationship evidence, the instruction itself limits the definition of domestic abuse to assault alone. The Minnesota Supreme Court noted, that under Minnesota law, juries are presumed to follow instructions, *id*. at 550, a presumption shared with federal law. *See, e.g.*, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Petitioner must show that the Minnesota Supreme Court's decision was in violation of clearly established federal law or resulted from an unreasonable determination of the facts. Here, Petitioner has shown at most only the possibility that the jury might have disregarded the instruction, which is not sufficient for habeas relief.

### b.   Failure to Employ Complete Pattern Jury Instruction

Petitioner asserts that the jury instruction for domestic-abuse murder failed to state fully and accurately the law because the trial court omitted one sentence from the model jury instruction. Pet. at 5. Petitioner contends that this omission constitutes reversible error. *Id*.

The model jury instruction provides:

> A "past pattern" consists of prior acts of domestic abuse which form a reliable sample of observable traits or acts which characterize an individual's behavior. More than one prior act of domestic abuse is required for there to be a past pattern.

10 Minn. Dist. Judge's Ass'n, *Minnesota Practice – Jury Instruction Guides, Criminal*; CRIMJIG 11.15 (2006). When instructing the jury on domestic-abuse murder, the trial court included all but the last sentence of the model instruction. *Matthews*, 779 N.W.2d at 550.

Petitioner did not object to this instruction at trial, *id.* at 550, and did not cite any violation of federal law when challenging the instruction on appeal, *see* Pet'r's Appellate Br. at 57-60. Accordingly, this claim is procedurally defaulted because *Knaffla* forecloses future consideration of the issue in state court. Petitioner has shown neither cause and prejudice for his default, nor that a fundamental miscarriage of justice would occur absent this Court's consideration of Petitioner's claim. Therefore, habeas relief is not available.

But even if this Court were to address the merits of Petitioner's claim, it too fails. "[T]he fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to [a model jury instruction]." *Id.* at 72. Habeas relief is only available if the deficient jury instruction amounted to a denial of due process. *Id.*

Here, the jury was instructed that a "past pattern" consisted of "prior *acts* of domestic abuse." *Matthews*, 779 N.W.2d at 550 (emphasis added). Used in the plural form, the word "acts" makes clear that more than one act of domestic abuse must be shown. The prosecutor told the jury in closing argument that "a past pattern has to include at least three instances of prior domestic abuse." *Id.* at 551. The Minnesota Supreme Court concluded that "the instruction correctly stated the law and did not confuse the jury." *Id.* at 550-51. This Court is deferential to the judgments of a state's highest court regarding questions of state law. *Hardy*, 132 S. Ct. at 491. Petitioner has

not shown that the ruling of the Minnesota Supreme Court is unreasonable in light of the record or contrary to clearly established federal law.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  28 U.S.C. foll. § 2254.  A certificate of appealability cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also Hardy v. United States*, Nos. CIV. 01-634 (JRT), CR 98-2751 (JRT/JGL), 2002 WL 1752215, at *5 (D. Minn. July 29, 2002).   "To make such a showing, the issues must be debatable among reasonable jurists, a court must be able to resolve the issues differently, or the case must deserve further proceedings."  *Hardy*, 2002 WL 1752215, at *5.  Petitioner has made no such showing.   This Court only has jurisdiction over Petitioner's *Batson* and prosecutorial-misconduct claims, and the Court does not consider these two claims to be close or difficult questions.   Therefore, this Court recommends that the certificate of appealability be denied.

[Continued on next page.]

## V.    RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that:

1.    Petitioner's Petition under 28 USC § 2254 for Writ of Habeas Corpus by a Person in State Custody (Docket No. 1) be **DENIED**;

2.    This action be **DISMISSED WITH PREJUDICE**;

3.    The certificate of appealability be **DENIED**; and

4.    The Clerk of Court be directed to enter judgment accordingly.


Date:  October  5th , 2012                              *s/ Tony N. Leung*

                                                        Tony N. Leung
                                                        United States Magistrate Judge
                                                        for the District of Minnesota


                                                        *Matthews v. State of Minnesota*
                                                        File No. 11-cv-651 (PAM/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **November 5, 2012**.